Our next case is 4121041, People v. Cooper. For the appellant, Denise Ambrose. For the appellee is Ellen H. Andrews. Ms. Ambrose, you may proceed. May it please the Court and Counsel. Counsel. The question raised by this appeal is whether or not the law of consent searches has shifted from a consideration of subjective factors to one that's purely objective. And this shift was most recently announced in Drayton, a 2002 case. In this case, the trial court was, her decision was swayed by subjective considerations. Particularly, she said that the defendant testified at the motion to suppress that nothing he said or did was intended to convey consent. He didn't articulate that at the scene for the police officer, and that was an improper consideration for the court to find. In fact, it was probably a pivotal factor in her decision. She said this case was extremely close, very close, that the state had a very good faith basis for finding that the defendant consented. That nothing that the officer did was the least bit coercive, and that it would have been reasonable for him to find consent, but because the defendant now said, after the fact, I didn't mean to consent, that tipped the scales with regard to her decision. This court appreciated the shift of consent law in its decision in Terry. He took a look at reasonably objective, the factors from what a reasonably objective police officer would find them to be. In Anthony, the Supreme Court was taking a look at subjective indications, and that was before Drayton. And Drayton was really a decision where the court, for the very first time, said you look purely at objective considerations, because it used the very same test for seizure, and it applied that to the test for whether or not there was consent. Let me ask you, Ms. Andrews, what troubles me about this case. This was a situation contrary to Terry, very familiar with Terry. Terry was the defendant who was essentially fooling around with the police. You have to do what you have to do, and assumes the position, and all the rest of the stuff. What happened in this case, it seems to me, is we have a search on the officer, where the defendant is simply responding to his directions and questions. What I find troubling is, the question before us and before him, is the defendant consenting to the search, and it seems to me he was too cute by half in asking that. How about saying, I'd like to search your car, will you consent? Or when he gets a different answer, or he says, how about saying, is that a yes that I can search your car? Or words to that effect? I mean, I just, it's hard for me to understand that the police officer wasn't dancing around the subject, because he was afraid he was going to get the answer no. Now, you're right that it's an objective standard, but what's a little troubling is, when the officer doesn't ask the question clearly, and calling for a response, then it's almost as if he is gaming the system to try to ensure, and it's going to be up to my inference, reasonably, from the conduct of the defendant, whether he's consenting as opposed to asking. Well, the officer did ask that question. And what was he told? At the outset, well, the defendant wanted to know, do you want to look in back? At first, the defendant asked for the parameters. How much, what part do you want to search? That indicates the door is open. Okay, yeah, I suppose it would. But I mean, you know, in technical evidentiary terms, that would be called a non-responsive answer. So, how far do you want to search, or does that include the back? The response would have been, yes, or that's what I'd want to do. Are you willing to let me search, or are you consenting to let me search? A follow-up to, you know, get an answer to the initial question, which I don't know that he ever got, did he? Well, the officer said, no, I want to search the entire vehicle. And the defendant said, oh, the entire vehicle. And the officer said, you know, you can, how's your leg? How's your leg? And he said, well, my, the front seat of the squad car, which is a place where another officer would sit. And, by the way, he never pats this guy down, and in the video, he walks ahead of the defendant. I was shocked by that. A little surprising. But there's no element of coercion whatsoever here. The defendant, you know, is. But what happened to the clarifying question? Well, he did not. But after the question about, yeah, you can sit in the front of my squad car if you're willing to let me search your car, are you? How long did that take? When the defendant is seated there, before he has begun the search, he says, this won't take very long. And the defendant does say, all right. Which is, you know, well, I've changed my mind. No, I don't want to do this. This won't take very long. Well, what happened to the follow-up question? Are you consenting? Well, that was troubling to the trial court as well, that he didn't persist in asking. It doesn't seem to me that this is an oversight, maybe to be more clear. It seems to me clearly that this was a question avoided, because I don't think the officer wanted to hear the answer. We can dance around with all this other stuff about, how's your leg? You can sit in the front seat, as opposed to, can I search your car? But then you're looking at a subjective intention on the part of the officer. Well, no. But the officer is looking at the inferences subjectively. He's not looking at them objectively. Well, no. He's using subjective judgment to reach the conclusion that in these circumstances, I think I've got enough to search the car, because I've gotten something in the nature of a consent from the defendant. Well, certainly. If I look at that objectively, I'd say there's a substantial question about whether he got consent. It's interesting to use those terms, subjective and objective, and we know what the standard is. I think I'm saying the same thing Justice Steitman is, in terms of, I'm going to be so nice to you, and so talkative, and so non-confrontational, that I'm going to get you to follow me. I think that was part of the, I don't think that was inadvertent. I don't think he felt any threat. No, he was very laid back. Laid back, but until he turned, you know, don't, no, no, don't lag back. Don't change your mind that these aren't words he spoke. Don't lay back and change your mind and get back in that seat and sit down. Come on back here. At that point, it's not, he's not quite as laid back when there's a hesitation on the part of the defendant after he exits the vehicle. No, no, come back here. Keep coming. Well, the defendant stopped because he wanted to open up part of, or pop something for the officer. No, no, you don't do that. That is pretty direct. No, come on back here. That offering to help in the search is more an objective indication that he is consenting to search. Well, I think it's a subjective indication. Well, the only reason we're talking about all of this is because the officer, in my judgment, explicitly chose not to ask follow-up questions for clarification purposes. So, he could say, hey, that was close enough. I inferred his agreement and consent from this kabuki dance that I engaged in with him. And, hey, I was reasonable in doing it. And, by the way, this is an arguable point. You've made an excellent argument on it, a very nice brief. But, I'm troubled by the idea that we are dealing with fellows pretty sophisticated in the sense of, I don't want to ask this question. Well, he was dealing with somebody who was equally savvy. Well, you're right in the sense of he didn't answer the question. The officer knew it. It's not like something that was hidden. He knew this guy's rap sheet for possession of drugs. Of course. He's using somebody else's offer. He didn't get a responsive answer. It looks like the defendant is dancing around. But, this goes back to the very first point I made. Who's in charge of the situation? Who's asking the questions? The officer could have said, well, sir, I'm not sure I understand. Or, he didn't really answer my question. Will you let me search your car? Well, certainly that would have been more direct. Well, it sure would have. But, even then. Why didn't he? Because the defendant was equally dancing around. You know, I wouldn't give him a direct answer yet. But, I don't know if you've been a trial lawyer, Ms. Ambrose. You're certainly an experienced, excellent appellate lawyer. But, we trial lawyers understand that when you get a non-responsive answer, the thing to do is repeat the question. Right. Until you get a responsive answer. The officer, it seems to me, chose not to do that. And, you're right. The defendant's dancing around. You know, he's not answering directly. But, the guy in charge of this situation is really the officer. And, he could have rephrased it or asked it again. And, then we wouldn't be here talking about it. But, there was a lot of ambiguity with what he kept asking the defendant. Is there anything in this vehicle I need to be concerned about? At first, it was no. And, then the second time he broaches the question, it's like, I don't know. Let me see. And, he even says, there might be guns. And, the officer doesn't order him out of the car at that point. I mean, talk about... It was a cute and clever way to introduce the entire subject of why he might want to search the car. But, the whole... You know, I've read a lot of consent cases and written a few. I think the crux of them all is, did he consent? And, by all the objective indications. He says, oh, I'll crawl over the center console. Will you open the door for me? And, the officer was concerned. If you notice, the officer was at the passenger side window. He didn't want to get hit by oncoming traffic or traffic going by. He was concerned about the same safety features for the defendant. And, the additional fact he's got a bum leg or bum knee that he said is hurting him. He never touches the defendant. Granted, maybe his subjective intention was, let me see, you know, I won't follow up with that direct question. But, that doesn't matter what he subjectively was intending. Because, by all of the objective indicia, the defendant was consenting. And, that's how an objectively reasonable officer would interpret that. Now, Schneckloth used the test, they lifted the test for the voluntariness of a confession. And, used that for assessing whether or not there was consent. Now, that test has changed as well. Colorado v. Connolly, where as you look at whether there's any coercive elements by the police. And, so, that again indicates that the court was using the wrong test here. But, counsel, do you agree that at this point the law still is that while you can consent by nonverbal conduct, mere acquiescence to the authority of the police officer is not enough? Do you agree? That's the correct test. But, what factors do you consider? If the defendant gets up and testifies, oh, I was just acquiescing, I was just... That testimony really is irrelevant as a motion to suppress unless it occurs right at... Here we have the video tape and the audio tape and it puts this court in a different posture to determine exactly what happened at the scene. You can hear the intonation of the officer's voice. You can see exactly what kind of interplay occurred between the two of them. So, that's why I was asking for de novo review. It's immaterial what the defendant got up and testified to. This is what I really intended or I didn't intend to convey this at all. Well, that mindset is immaterial. What matters is how somebody would interpret that tape. Was there an objection to that question and answer? No. No, there wasn't. Okay. Everything the defendant did, though, indicated that he was consenting. And you also know, okay, the officer didn't tell him you can refuse consent, but this guy's been around the block. I mean, he's unlawful use of weapon by a felon. That's not required. Drayton made that clear that that's not required that you have to tell a person... No, it isn't required. But the officer knew from having run his rap sheet that he probably knew as much of the law as the officer. Well, in the last 13 years, though, he'd forgotten a lot. No, that was not true. Oh, that turns out that was not true. No, I mean, he said, oh, I've given up that lifestyle. That's not... And the officer didn't challenge him and say, oh, you know, I know you're lying. He doesn't become confrontational with him. He says, oh, so you've given up that lifestyle. And even when the guy says, you know, there might be guns in the vehicle, the officer, at that point, I would think he would have ordered him out of the vehicle and for good reason, saying that there might be guns in here. But again, talk about restraint, there's no coercion whatsoever in this case. Are there any other questions? That concludes my opening. Okay. Thank you, counsel. Mr. Andrews. May it please the court. Counsel. As you well know, but I'm required to say, I'm Alan H. Andrews and I'm here representing Mr. Cooper and I'm going to ask this court to affirm the trial judge's ruling. The state, in its reply brief, said the overarching question in this case is what test the trial judge applied. I would suggest that the overarching issue is whether the trial court's ruling was correct. And it is correct, whether you apply an objective test or any test. That's my position. The legal issue in this case is simply this. If you comply with an officer's order to leave your car, does that constitute consent to search your car? And I say it does not. Trooper Payne said to Mr. Cooper, well, I'm going to have you step out of your car. Trooper Payne testified that by that he was directing Mr. Cooper to get out of his car. Trooper Payne testified that when he did get out of the car, I took that as the consent. So whether Trooper Payne is dancing all around, this or that, the point is he never got consent. It didn't matter how hard he tried or how hard he tried to avoid it. The state's position that you consent to a search of your car merely by complying with an order to get out is simply untenable. It would promote people. If you want to be a good citizen, not violate the law by not resisting arrest, you have to surrender your Fourth Amendment rights. And I just don't think that's true consent. That's mere acquiescence with a police officer's command. The state has pointed to some comments made by Mr. Cooper about offering to pop things open. And finally, when he's in the car, when he's told it won't take long, he says, all right. Those are not consent either. That's merely acquiescence. He's already been ordered out of his car. So those statements, simply put, do not constitute consent. At that point, the search was inevitable. You know, one of the big differences between this case and Terry, obviously, is that when the defendant and Terry started assuming the position, the police officer kept saying, does that mean you're agreeing to allow me to search you? Is that a legal question to ask? Is that a legal question? I think it certainly is. I mean, it seems to me that, you know. But police training said never utter those words. That doesn't mean it's not legal. OK. I asked my retired state police captain about this case. But he just rolled his eyes at me. He wouldn't say anything. But moving briefly on to whether or not the judge applied the wrong test here, he did not. The state's making too much of the statement where the judge found the defendant testified here today that he never consented. He never gave permission. The state is acting as if that was the legal ruling. All that was was a fact finding. The whole context of that is the defendant testified here today that he never consented. The burden then becomes the state's to prove that he did. The judge is just saying that, you know, now the burden of proof has shifted. Judge Freitag then went on to discuss the video at length before he made his ruling. So this one comment about the defendant's testimony, that was not decisive in the ruling. That was simply a finding of fact. More evidence the judge didn't apply an antiquated, you know, subjective test. You know, first of all, he never mentioned SNCC law. He certainly never used the word subjective test. It's a she or an it if you find it in trial court. But she was the trial judge, wasn't she? I thought it was Judge Freitag who did the actual ruling that it was initially assigned. Wasn't Judge Foley? I thought it was Judge Freitag. If I'm wrong, well, it doesn't matter. I'll start calling it the court. It's always the court and it. So anyway, the court never mentioned any of the factors commonly considered in a subjective test. The accused age, the accused intelligence or lack thereof, the accused education or lack thereof. And interesting, the state keeps stressing what is plainly a subjective factor. The fact that Mr. Cooper perhaps is an experienced individual when it comes to the criminal justice system. But the court in this case didn't mention that. And that's a classic example of an objective, a subjective test. There really just isn't anything in the court's ruling that supports the idea that the court applied the wrong test. You know, other than that, unless the court has some questions, I would simply ask that you affirm the trial judge's ruling. Thank you. I see none. Thank you, Mr. Andrews. Ms. Ambrose? Just briefly, I'll have to say this, that the court was not making a conclusion or that the defendant did not consent. She said that she was, you know, swayed by the fact that he testified at the hearing. I didn't mean to consent. I don't know exactly what I said to the officer, but it wasn't meant to imply consent. And with regard to whether or not it was subjective with the defendant's criminal history, that's an objective factor because the officer knew about it. If he hadn't run his criminal history, then I would agree that later on down the road when we find out how many criminal cases he's had before, it would be immaterial, but he's run the history, and so he knows that he's dealing with somebody who he probably knows his way around criminal procedure and criminal law. What is our standard of review? I'm asking for a de novo standard of review. But that means we don't have to be concerned with what the trial court said or if she implied the wrong standard, doesn't it? Yes, but he's also, my opponent is asking for the judge's statements. He does not agree with me on the standard of review. And the problem here is that, you know, she found that there was not actual consent. Now, that's probably a finding of fact, and that finding of fact was come upon by application of the wrong standard. Are there any other questions? I see none. Thank you. Thank you, counsel. We'll take this matter under advisement and be in recess for a few minutes.